***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Holmes with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has *Page 2 
jurisdiction of the parties and the subject matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The employment relationship existed between the employee and employer on June 15, 2005, date of the injury by accident. *Page 3 
4. Defendant-employer was self insured with PMA Insurance Group serving as third-party administrator.
5. Plaintiff suffered an injury by accident on June 15, 2005.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 50-year-old man who worked as a load operator for North Carolina Granite Corporation. Plaintiff completed the 8th grade in school but cannot read or write. Plaintiff worked for defendant-employer for over 26 years. On June 15, 2005, plaintiff was working for defendant-employer when he fell from a ladder and suffered distal fractures to his left tibia and fibula.
2. Plaintiff's claim was accepted as compensable pursuant to the Form 60, Employer's Admission of Employee's Right to Compensation, filed with the Commission on or about June 22, 2005.
3. On August 3, 2006, plaintiff filed a Form 33, Request that Claim beAssigned for Hearing, in which he claimed to be entitled to medical treatment for his back, diabetes, post-traumatic stress disorder and anxiety and on September 14, 2006, defendants filed a Form 33R.
4. On February 27, 2001, four years prior to the subject claim, plaintiff was evaluated by Dr. Craig Derian after slipping in his tub at home three weeks prior. As a result, he had a severe increase in pain in his low back and right buttock with tingling in the right heel area. Dr. Derian noted that plaintiff had back pain for 20 years prior and plaintiff had significant back symptoms 2 to 3 times per week over the last several years. Dr. Derian also noted that plaintiff was obese and had sleep disturbance.
5. Plaintiff underwent a spinal fusion on April 1, 2001 and at that time, Dr. Derian noted that plaintiff had Grade I spondylolisthesis L5-S1 with bilateral foraminal spinal stenosis with associated disc degeneration.
6. On February 27, 2003, Dr. Jennifer Chapman, a family physician, evaluated plaintiff for left sided back pain and at that time, Dr. Chapman noted that plaintiff had a history of chronic back pain and was taking Vicodin every six hours for his back pain, that plaintiff was taking Xanax twice a day for anxiety and that plaintiff had prior back surgery. Dr. Chapman further noted that plaintiff was obese.
7. On June 15, 2005, plaintiff was climbing a front-end loader when his hands slipped off the ladder and he fell approximately 8 feet to the ground. Plaintiff was transported by ambulance to Northern Surry Hospital where an x-ray showed comminuted fractures of the distal shafts of plaintiff's left tibia and fibula. Plaintiff was transferred to Forsyth Medical Center where Dr. Timothy McGowen performed an irrigation and debridement open fracture left tibia-fibula and intramedullary rodding left tibia-fibula shaft fracture.
8. Plaintiff subsequently came under the care of Dr. William Craig, an orthopedic surgeon, for treatment to his left leg.
9. On October 3, 2005, Dr. Chapman diagnosed plaintiff with type II Diabetes. Dr. *Page 4 
Chapman testified plaintiff had several risk factors for diabetes, including a positive family history. Dr. Chapman also stated that there is a relationship between plaintiff's obesity, poor diet choices, family history, sedentary lifestyle, and lack of exercise and his diabetes. Dr. Chapman testified she could not render an opinion as to which one of the above mentioned factors is more responsible than another in causing plaintiff's type II diabetes.
10. Dr. Chapman has also been treating plaintiff for general anxiety and has been prescribing plaintiff Xanax for anxiety since 2003. Dr. Chapman ultimately diagnosed plaintiff with depression when plaintiff began complaining of feeling frustrated and having difficulty sleeping. Dr. Chapman opined that plaintiff's depression was caused by the work-related injury because prior to the injury plaintiff had not reported symptoms of depression. However, Dr. Chapman also indicated that uncontrolled chronic back pain for an extended period of time, as plaintiff suffered from for several years, likewise could have an adverse affect on his psychological condition.
11. Dr. Chapman's opinion relating plaintiff's depression to the June 15, 2005 injury is assigned little weight.
12. On December 1, 2005, plaintiff was evaluated by Mr. Darrell T. Garner, LCSW. Mr. Garner diagnosed plaintiff with post traumatic stress disorder. Subsequent to his diagnosis, Mr. Garner noted that plaintiff reported no episodes of depression, anxiety or treatment for psychiatric purposes prior to his work related accident. Mr. Garner testified he had no knowledge of plaintiff's pre-existing long term battle with anxiety that required prescription medication.
13. Mr. Garner's opinion regarding the causal relationship between plaintiff's psychiatric conditions and the June 15, 2005 injury is given little weight as his opinion is based *Page 5 
upon incorrect information regarding plaintiff's pre-existing psychological condition.
14. On February 21, 2007 Dr. Craig opined that plaintiff was at maximum medical improvement as to his left leg fractures. Dr. Craig also referred plaintiff to Dr. Derian for an examination of his back as plaintiff had been complaining of back pain and to determine if the back pain was related to the work injury.
15. On February 26, 2007, almost two years after the work-related accident, plaintiff returned to Dr. Derian for low back and bilateral lower extremity pain. Dr. Derian opined that plaintiff did not have any new structural abnormalities above his fusion area nor did he have any problems with his fusion and that the other areas of plaintiff's spine looked normal. Without any evidence of structural abnormalities, Dr. Derian testified that there would be no way to quantify how much plaintiff's injury may have aggravated his pre-existing back condition.
16. After a functional capacity evaluation, on April 5, 2007, Dr. Craig assigned plaintiff permanent work restrictions of light duty as set out in the functional capacity evaluation, including exerting up to 20 pounds of force occasionally.
17. On May 24, 2007 Dr. Craig assigned a 20% permanent partial impairment rating to plaintiff's left leg. Dr. Craig further recommended plaintiff receive chronic pain management for his chronic left leg pain.
18. On July 7, 2006 Dr. T. Stuart Meloy noted that plaintiff had chronic regional pain syndrome in his left lower extremity and that he also had lumbar degenerative disc disease as well as lumbar facet syndrome. Dr. Meloy also noted that plaintiff's back and groin pain was most likely due to his lumbar facet syndrome.
19. In his deposition, Dr. Meloy testified that plaintiff had a prior back injury and had other pre-existing conditions to his back including lumbar degenerative disc disease and lumbar facet syndrome. *Page 6 
20. Based upon the greater weight of the competent evidence, the Full Commission finds that plaintiff has failed to prove that his diabetes, psychological conditions, and back condition were caused or aggravated by the June 15, 2005 injury by accident.
21. After receiving the results of the functional capacity evaluation, defendant-employer prepared a job description for an assistant blacksmith position to offer to plaintiff. While the job has been in existence for over 100 years, the position has not been filled for over 4 and ½ years. Mr. Goad, the Vice-President of Human Resources for defendant-employer, testified that the position requires standing for longer than 15 minutes at a time and that only 10% of the job duties would give the plaintiff an opportunity to sit down. There was no evidence regarding the rate of pay for the position or whether it would be full-time or part-time work.
22. Dr. Craig reviewed the job description for the assistant blacksmith position and agreed that the position fell within the lifting restrictions assigned to plaintiff but had concerns with the amount of standing plaintiff would be required to do.
23. The assistant blacksmith position is not suitable for plaintiff.
24. The undersigned have considered the methods for calculating average weekly wages set forth in N.C. Gen. Stat. § 97-2(5) and finds the second method to be appropriate in this case. Plaintiff missed more than seven consecutive days during his 52 weeks of employment prior to the date of injury. Evidence was submitted reflecting that plaintiff worked for 46.14 weeks of the 52 weeks preceding his injury. Plaintiff's wages for these 46.14 weeks totaled $27,297.08. This figure divided by 46.14 generates an average weekly wage for plaintiff of $591.61, which yields a weekly workers' compensation rate of $394.41.
 25. Defendant has not defended this matter in an unreasonable manner. *Page 7 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his left leg on June 15, 2005. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and his diabetes, psychological conditions, and back condition.Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
3. The assistant blacksmith position proffered by defendant-employer is not suitable for plaintiff. N.C. Gen. Stat. § 97-32.
4. In this case, the application of the second method of calculation under N.C. Gen. Stat. § 97-2(5) is appropriate. Plaintiff missed more than seven consecutive days during his 52 weeks of employment prior to the date of injury. Evidence was submitted reflecting that plaintiff worked for 46.14 weeks of the 52 weeks preceding his injury. Plaintiff's wages for these 46.14 weeks totaled $27,297.08. This figure divided by 46.14 generates an average weekly wage for plaintiff of $591.61, which yields a weekly workers' compensation rate of $394.41. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff remains temporarily totally disabled and is entitled to receive disability compensation in the amount of $394.41 per week from June 15, 2005 until plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29, Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Any difference in what defendant has already paid plaintiff in compensation and plaintiff's correct compensation rate *Page 8 
shall in paid in a lump sum subject to the attorney's fee approved below.
6. Defendant is required to provide plaintiff with reasonably necessary medical treatment related to the compensable left leg injury that tends to effect a cure, provide relief, or lessen the period of disability, including the evaluation by Dr. Derian *Page 9 
conducted at the recommendation of Dr. Craig and pain management for plaintiff's chronic left leg pain. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1.
7. Plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee set out below, defendant shall pay plaintiff temporary total disability compensation in the amount of $394.41 per week from June 15, 2005 and continuing until plaintiff returns to work or until further Order of the Commission. Any difference in what defendant has already paid plaintiff in compensation and plaintiff's correct compensation rate shall in paid in a lump sum subject to the attorney's fee approved below.
2. An attorney's fee for plaintiff's counsel is approved in the amount of 25% of the difference in what defendant has already paid plaintiff in compensation and plaintiff's correct compensation rate and 25% of continuing temporary total disability compensation awarded to plaintiff. Defendant shall send every fourth compensation check directly to plaintiff's attorney.
3. Defendant shall pay for all medical treatment for plaintiff's left leg as a result of his compensable injury of June 15, 2005 for so long as said treatment tends to effect a cure, give relief and lessens plaintiff's period of disability, including the evaluation by Dr. Derian conducted at the recommendation of Dr. Craig and pain management for plaintiff's chronic left leg pain.
4. Defendant shall pay the costs which include the following expert witness fees, if not already paid: $500.00 to Dr. William L. Craig, $600.00 to Dr. Thomas C. Derian, $425.00 to Dr. Stuart Meloy, $340.00 to Dr. Jennifer H. Chapman and $275.00 to Darrell T. Garner LCSW.
This the 16th day of December, 2008.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 10